GEORGE TAYLOR,

       Plaintiff,

    v.

JAVIER NUNEZ,

       Defendant.

No. 18 CV 7844

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

In November 2016, Plaintiff George Taylor, who is black, visited the Illinois Department of Human Services to reapply for Medicaid and Supplemental Nutrition Assistance Program benefits. An IDHS caseworker, Javier Nunez, told Taylor that, although Nunez had approved Taylor for a year of benefits, if Taylor did not have a job by January 1, his benefits would be cut off due to a new policy. In January, Taylor's pharmacy informed his girlfriend that Taylor's health benefits had been canceled and his antiseizure medication cost $156. Taylor did not have the money for the medication and missed a dose. As a result, he suffered four seizures that have affected his memory. Two IDHS caseworkers later told Taylor that his benefits should not have been terminated, and that no new policy began on January 1. Taylor, acting pro se, brings an equal-protection claim under 42 U.S.C. § 1983 against Nunez. Taylor alleges that, because of his race, Nunez lied to him about reapproving him for a year of Medicaid, then cut off his health benefits. Nunez argues that Taylor has

failed to state an equal-protection claim and moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, Nunez's motion is granted.

## I.      Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019); *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

Courts should not demand "too much specificity" in complaints alleging race discrimination. *Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019); *see also Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (discussing "liberal" pleading requirements "particularly with regard to Equal Protection claims"). And a plaintiff alleging discrimination "need not allege each evidentiary element of a legal theory to survive a motion to dismiss." *Freeman*, 927 F.3d at 965. Notably too, a complaint filed pro se must be "liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers." *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

Still, even under these liberal pleading standards, "allegations in the form of legal conclusions are insufficient" to state a claim. *Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015) (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012)). So are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (quoting *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014)); *see also Walton v. First Merchants Bank*, 772 Fed. App'x 349, 350–51 (7th Cir. 2019) (noting that although the burden to allege race discrimination was "not high," plaintiff's complaint nevertheless "fell short"), *cert. denied*, No. 19-93, 2019 WL 4922720 (Oct. 7, 2019).

## II. Facts

In November 2016, Plaintiff George Taylor went to the IDHS office in Lombard to reapply for Medicaid and SNAP benefits. [8] ¶ 6.[1] He met with Javier Nunez, a caseworker, who told Taylor that he "should have a job." [8] ¶¶ 7–8, 61. Taylor responded that he had applied for Social Security benefits because he suffered from seizures. [8] ¶ 8. At the end of the interview, Nunez told Taylor that he was approved for a full year of medical benefits. [8] ¶¶ 9–10, 61. Nunez added that Taylor needed to find a job by January 1 or his SNAP benefits would be terminated. [8] ¶¶ 9–10, 61. Taylor asked Nunez why, if he had just been reapproved for a full year, his benefits would terminate in two months. [8] ¶ 10. Nunez responded that there was a new policy in effect as of January 1. [8] ¶ 10. Taylor felt that Nunez was annoyed by his

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

questions and acted "inconsiderate," "careless," and "unconcerned." [8] ¶¶ 7–8. Taylor and his girlfriend later looked online and could not find any information about a new policy requiring employment for Medicaid or SNAP eligibility. [8] ¶ 12.

On January 9, when Taylor's girlfriend tried to pick up his medication, the pharmacy told her that Taylor's benefits had been "cut off" and the medication cost $156. [8] ¶ 13. She called Taylor, who said he had enough medication to last two more days and that he would straighten it out. [8] ¶ 14. Taylor actually had enough medication for only one day. [8] ¶¶ 14, 26.

The next morning, Taylor called IDHS. [8] ¶ 15. A representative said that Taylor's benefits had been canceled because IDHS had sent him a redetermination letter in the mail, and Taylor had failed to return it. [8] ¶ 16. Taylor explained that he had just been reapproved for benefits in November, so was not scheduled to be redetermined, and, in any event, he had not received any redetermination letter. [8] ¶¶ 17–18. Taylor spoke to three different representatives, who all said there was nothing they could do; they told him to visit the Lombard office and speak with a caseworker as soon as possible. [8] ¶¶ 19–24.

Taylor could not come up with the money for his prescription that day and ran out of medication. [8] ¶¶ 26, 77. Starting at 11:30 p.m., he began to experience seizures that lasted about 10–15 seconds. [8] ¶ 27. By 6 a.m., he had experienced three or four short seizures. [8] ¶¶ 27–29. At 9 a.m., Taylor's girlfriend walked into their bedroom while Taylor was having a "[b]ig seizure," which lasted two minutes; afterward, Taylor was "out of it" for about 30 minutes and did not remember that he

4

had just had a seizure. [8] ¶ 31–32. Around 12:30 p.m., Taylor's aunt brought him a one-day supply of his medication. [8] ¶ 33.

Taylor called the IDHS redetermination hotline later that day and explained what had happened. [8] ¶ 34. A representative told Taylor that he needed to fill out a redetermination form and send it back. [8] ¶ 34. IDHS designated his application an emergency application. [8] ¶ 35. In the meantime, Taylor's girlfriend and family were able to pick up a one-day supply of his medication every day. [8] ¶¶ 37–39.

On January 18, Taylor returned to the IDHS office in Lombard. [8] ¶ 44. After retrieving Taylor's case file on her computer, a caseworker told Taylor that his benefits should not have been canceled, and she did not know what had happened. [8] ¶¶ 44–45. The caseworker tried to open a new case for Taylor but experienced computer issues, so said she would open a case for him within the next day or two. [8] ¶ 46. She told Taylor that she would call him, and he would not have to return to the office. [8] ¶ 46. The caseworker never called, so, on January 24, Taylor returned to the Lombard office and met with a different caseworker [8] ¶¶ 47–48. That caseworker said no one had taken any action on his case the previous week, and his file did not reflect that he had come in. [8] ¶ 49. Both caseworkers Taylor met with in January said no new policy had gone into effect on January 1, and observed that there was no caseworker name in Taylor's file associated with his November visit. [8] ¶¶ 45, 50.

During the second January visit, Nunez walked by while Taylor was meeting with the caseworker. [8] ¶ 51. Taylor pointed Nunez out to her as the person

responsible for canceling his benefits. [8] ¶ 51. Taylor added that Nunez had tried to hide his involvement by removing his name from Taylor's file. [8] ¶ 51. The caseworker advised Taylor that a "computer glitch" had likely caused his benefits to terminate. [8] ¶ 51. Taylor observed that it was "funny" that the computer glitch had happened to "the one person" whom Nunez had told about a new policy going into effect. [8] ¶ 51. The caseworker reapproved Taylor's benefits. [8] ¶ 52.

Before leaving, Taylor asked to see a supervisor and for a grievance form. [8] ¶¶ 52–54. The caseworker told him to go to the waiting room and ask the front desk, and Taylor repeated his request to see a supervisor. [8] ¶¶ 52–54. The caseworker called a security guard, who told Taylor to leave [8] ¶ 54. When Taylor insisted on talking to the guard, the guard called 911. [8] ¶¶ 54–56. While waiting for the police, Taylor flagged down a supervisor who was walking by, and he explained the situation to the supervisor. [8] ¶ 57. The supervisor told the police that there had been a misunderstanding and gave Taylor a grievance form to fill out. [8] ¶ 58–59.

After the seizures, Taylor began suffering from dizzy spells and memory loss that he had not experienced before the seizures. [8] ¶¶ 43, 81. He was unable to remember certain words, people, and memories, such as being mugged and shot in 1996, an incident that he had talked about frequently before the seizures. [8] ¶¶ 40–43, 80, 86.

## III. Analysis

Taylor alleges that Nunez's comment that he "should have a job" was discriminatory, harassing, racist, and classist. [8] ¶ 60.[2] He alleges that, because Taylor is black, Nunez deliberately lied to him about reapproving him for a year of medical benefits without informing him of the IDHS redetermination policy, then canceled Taylor's benefits and removed his name from the case file to cover it up. [8] ¶¶ 63–67. Taylor brings an equal-protection claim under 42 U.S.C. § 1983.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law violated his federal constitutional rights. *Brown*, 398 F.3d at 908. An equal-protection violation occurs when a defendant's actions "had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001); *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996). To establish discrimination under the Equal Protection Clause, a plaintiff must show that "he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *Brown*, 398 F.3d at 916 (quoting *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)).

Here, Nunez argues that Taylor has failed to state a claim because he has not alleged that he was treated worse than a similarly situated member of an unprotected class or that Nunez acted, if at all, with intent to discriminate against Taylor based

---

[2] Taylor also alleges that IDHS was negligent in allowing his benefits to lapse and not remedying the situation more quickly. [8] ¶ 68–69, 82, 87–89. In his original complaint, [1], he named IDHS as the sole defendant. He later amended his complaint and replaced IDHS with Nunez in his individual capacity. [8]. As Nunez points out, IDHS is immune from suit under the Eleventh Amendment. *EOR Energy LLC v. Ill. Envtl. Prot. Agency*, 913 F.3d 660, 664 (7th Cir. 2019).

on race.[3] Taylor concedes that he has not alleged that he was treated differently than a member of an unprotected class. But he argues that his complaint sufficiently alleges discriminatory intent because discrimination was the only explanation for Nunez canceling his benefits, and because Nunez's critical comments about Taylor's employment status were based on racial stereotypes.

The only fact that Taylor points to in support of his claim of an equal-protection violation is that he is black, and Nunez is not. That allegation, standing alone, is not enough to clear the plausibility threshold. As Taylor concedes, he does not identify any member of an unprotected class in a similar position to him. Nor does he allege that he was treated differently than that person. To be sure, in the discrimination context, failing to identify similarly situated comparators is "not fatal" to the complaint. *Freeman*, 927 F.3d at 965; *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014). But Taylor also does not allege any facts that would allow me to infer that Nunez had a discriminatory intent. Neither the cancelation of his benefits nor Nunez's comment that Taylor should have a job were linked in any way to Taylor's race. Rather, the suspension of his benefits may have been the result of an unintentional error. It is not plausible that the only explanation for the termination of his benefits was Nunez's racial animus. And while Nunez's assertion that Taylor

[3] Nunez initially interpreted Taylor's complaint as bringing a class-of-one equal-protection claim. [15] (first motion to dismiss). I understood Taylor's complaint to bring a race-discrimination claim, [9], [17], and Nunez amended his motion to address Taylor's claim of race discrimination. [20]. Taylor has clarified that he intended the claim to be based on race discrimination. [25] ¶¶ 3–5, 8–9 (response to motion to dismiss). Nunez's first motion to dismiss, based on the class-of-one theory, [15] is denied as moot.

needed to have a job by January 1 was ultimately incorrect, there is nothing about the statement that suggests Nunez made it with a nefarious discriminatory purpose.

Taylor's assertion that Nunez canceled his benefits because Taylor is black cannot save the complaint either. That allegation is "merely a conclusion, unsupported by the necessary *factual* allegations to support a reasonable inference of discriminatory intent." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 886–87 (7th Cir. 2012) (upholding dismissal of Title VII complaint alleging intentional discrimination where plaintiffs "assert[ed] in wholly conclusory terms" that defendant had "the intent to discriminate").

Taylor is not required to produce evidence or identify similarly situated people who were treated differently at this stage of the case. But the complaint must still have something in it beyond speculation to suggest that Nunez acted out of racial spite. The allegations that Nunez's comments and actions were motivated by racism, [8] ¶¶ 60, 65, are not enough to nudge the claim from the conceivable to the plausible, because there is nothing supporting the claim of Nunez's motivation other than Taylor's hunch or feeling. Although his sense of the interaction with Nunez may have been born from a lifetime of experience, Taylor's impression is nevertheless only a guess. Thus, even construing Taylor's pro se complaint liberally, and even drawing all inferences in his favor, he has failed to state an equal-protection claim. *See, e.g.,* *Gillard v. Northwestern Univ.*, 366 Fed. App'x 686, 688–89 (7th Cir. 2010) (affirming

dismissal of a complaint because plaintiff did "not allege any facts raising a plausible inference that race … was a factor" in defendant's action).[4]

Put another way, Taylor's "conclusory allegation that defendant mistreated him because he is black" cannot sustain his equal-protection claim where he "has failed to plead any facts, apart from his own race, from which the court can draw an inference that defendant's actions were at all motivated by plaintiff's race." *McDonald by McDonald v. Haskins*, No. 90 C 2797, 1991 WL 61036, at *1 (N.D. Ill. Apr. 10, 1991), *aff'd*, 966 F.2d 292 (7th Cir. 1992); *see also Hancock v. City of Chicago*, No. 18 C 4580, 2019 WL 1399949, at *2 (N.D. Ill. March 27, 2019) (dismissing equal-protection complaint where sole factual allegation that conduct "was committed upon [plaintiff] because … [he] is an African American" was "insufficient to state a claim"); *cf. Casimir v. City of Chicago*, No. 15 C 3771, 2018 WL 1695362, at *8 (N.D. Ill. Apr. 6, 2018) (denying motion to dismiss equal-protection complaint that "include[d] much more than … bare allegations of racialized intent," but told a "story of racial profiling that holds together").

## IV.    Conclusion

Because alleging membership in a protected class alone does not suffice to state a claim for an equal-protection violation, Nunez's amended motion to dismiss, [20], is granted. Taylor's amended complaint is dismissed without prejudice. The court will

---

[4] The allegation that Nunez was classist, or discriminating on the basis of poverty, is even more speculative and does not allow an inference of a viable claim of irrational government action on the basis of wealth. Encouraging beneficiaries to obtain employment is rationally related to a legitimate goal of administering limited resources for the truly needy.

give Taylor one more opportunity to plead a viable federal claim. If an amended complaint is not filed by November 12, 2019, the dismissal of the federal claim will convert to a dismissal with prejudice, any state-law claims will be dismissed without prejudice for lack of jurisdiction, and this case will be closed. An amended complaint replaces all earlier complaints and must stand on its own as a complete document. Taylor should consider whether his case may be best presented to a state court with appropriate jurisdiction over a claim about state employees mismanaging his benefits. If Taylor files an amended complaint against Nunez, the response to the amended complaint will be due December 3, 2019.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: October 22, 2019